## CHICAGO AND ALTON RAILROAD COMPANY

### v.

## WILLIAM PRATT.

1. PREPONDERANCE OF EVIDENCE.—The court is of opinion that the preponderance of the evidence is in favor of appellant's theory, that the stock car occupied a position next in the rear of the flat car, and consequently was that from which appellee fell.

2. DEFECT IN MACHINERY.—Employers are not insurers of the safety of tools or machinery furnished their employes. They are only liable in case of their own negligence or that of their representatives, and the burden of proving such negligence is upon the person alleging it, and where notice of an existing defect is an essential element of the negligence complained of, such notice must be proved.

APPEAL from the Circuit Court of Jersey county; the Hon. C. EPLER, Judge, presiding. Opinion filed January 22, 1884.

Messrs. WISE & DAVIS, for appellant; cited C. & A. R. R. Co. v. Platt, 98 Ill. 141; Toledo, P. & W. Ry. Co. v. Conroy, 61 Ill. 162; C., C. & I. C. Ry. Co. v. Troesch, 68 Ill. 545; E. St. L. P. & P. Co. v. Hightower, 92 Ill. 139; I. & St. L. R. R. Co. v. Estes, 96 Ill. 470; O. & M. R. R. Co. v. Schiebe, 44 Ill. 460; C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; Hibbard v. Molloy, 63 Ill. 471; Knott v. Skinner, 63 Ill. 239; Puterbaugh v. Crittenden, 55 Ill. 485; Waggeman v. Lombard, 56 Ill. 42; C. & A. R. R. Co. v. Purvines, 58 Ill. 38; T., W. & W. Ry. Co. v. Moore, 77 Ill. 217.

Messrs. COPE & McGINNIS, for appellee; as to instructions, cited Green v. Lewis, 13 Ill. 642; Fisher v. Stevens, 16 Ill.

397; Newkirk v. Cone, 18 Ill. 449; I. C. R. R. Co. v. Dunn, 51 Ill. 78; Merritt v. Taylor, 20 Ill. 65; Roe v. Taylor, 45 Ill. 485; Chapman v. Cawrey, 50 Ill. 512; Rockford Ins. Co. v. Nelson, 75 Ill. 584.

McCULLOCH, P. J. This is a suit by appellee against appellant to recover damages for injuries sustained by appellee while employed as brakeman upon appellant's road. The declaration alleges that in the performance of his duty as such brakeman it was necessary for appellee to go up on top of the cars and down again, and in doing so he was compelled to use the ladders upon the said cars, placed on them for the servants of the defendant to use in operating the train; that in going up one of said ladders with due care and caution, one of the rounds on the same pulled out, broke and gave away, whereby he was thrown to the ground, run over by the cars and lost one of his legs. The first count charges that the step or round of the ladder was carelessly and negligently allowed and suffered to become insecure, unsafe and out of repair by the defendant, in consequence of which appellee received his injury in manner aforesaid. The second count in its charge of negligence is substantially the same as the first.

It appears from the evidence that the train on which appellee was at work at the time of the injury was made up at East St. Louis, left there a little before midnight, stopping at Venice, at Mitchell, at Edwardsville crossing, and arriving at Alton at about half past one in the morning, at which time and place the accident happened. When the train left East St. Louis it consisted of nineteen cars. Switching was done at the several stations at which the train stopped. At Venice a stock car was taken which was destined for Jacksonville. The position of that car in the train at the time of the accident is in one view of the case a controlling question, for appellee testifies he fell from the car next in the rear of a flat car, and that one he says was a box car. His counsel admit that if the car from which he fell was the cattle car taken into the train at Venice, he has no case, for the testimony is conclusive that that car was in good condition, and without any steps out of the ladder, when the train arrived at Alton.

Appellee testified that when the train left Venice the stock car was second in the train. At Mitchell they took on the flat car, then the stock car was the third car. At Edwardsville they took on two more cars which made the cattle car the fifth. The train then consisted of two box cars in front, then the flat car, then a box car, then the cattle car, after which came the remainder of the train as it had left East St. Louis. Appellee, according to his own testimony, first passed over the top of the two box cars next to the engine, then over the flat car and attempted to ascend the ladder on the box car next in the rear of the flat car, in doing which he fell and received his injuries.

The testimony of the conductor is that the stock car was the fourth in the train after leaving Edwardsville, and that it came next in the rear of the flat car; that there were two cars taken on at Edwardsville and one left there. Appellee does not claim there was any change made in any portion of the train except as to the five cars in front. He says that at Mitchell the flat car was put next to the engine. The conductor says that at Mitchell the flat car was put behind the car that was to be left at Edwardsville, and that at Edwardsville two cars loaded with wood were taken on and the car destined for Edwardsville was left. His testimony is corroborated by the report made by him to the company as to the places where the several cars were taken on and left off the train, but as to the position of the cars in the train this report furnishes no evidence. If the conductor's statement is true then it is admitted appellee has no cause of action.

The accident happened on a bridge across a small stream within or near to the city of Alton. In support of his side of the case appellee called as a witness one Frank Roller, who, on the night of the accident, was employed at a lime kiln, about forty-five yards from the railroad. When the train had come within about one hundred yards of him he saw a man walking with a lantern going on a flat car toward the rear of the train, and he, the witness, could see by the light of the lantern in the man's hand, that the car next in the rear of the flat car was a box car. When the man with the lantern came

to that car he began climbing up the ladder, when the bridge shut out the view. Then as the train passed by him and between him and the glass works on the opposite side of the road, and not more than forty-five or fifty yards from him, he could plainly see from the light of the glass works that the car where he had seen the man walking was a flat car and the one in the rear of it was a box car. A very few moments afterward he heard appellee's cries for help and went to him where he lay on the bridge. Standing alone, these statements would tend to support appellee's evidence. But this witness is fully as positive in stating that the car in front of the flat car was an empty stock car; that the second car ahead of the flat car was a box car; that there were four cars between the engine and the flat car, making the train consist, first, of three box cars, then the stock car, then the flat car, then the box car from which appellee fell. This arrangement places four cars between the flat car and the engine, whereas appellee testifies there were only two and they both box cars. According to appellee's arrangement the stock car was the second in the rear of the flat car, whereas this witness places it the first in front of it. In this he is contradicted, not only by appellee himself, but by every other witness who testified upon this point.

Harry Livingston, another witness for appellee, was with Roller at the time the train passed the lime kiln. This witness is unable to give the relative position of the cars in the train. He does, however, testify that he saw a man with a lantern going up the ladder on the side of a car, and that car was a box car. Unfortunately, however, he states that the car he saw the man go up on was the car ahead of the flat car toward the locomotive. It appears, therefore, that upon this vital point in the case, appellee and his own witnesses are in direct conflict with each other.

In further support of his case appellee proved that on the day before the accident one Lone had set a fish net under this bridge and when he raised it two days afterward he found on the top of the net an iron round from a ladder of a car; that in this iron there was a screw and on the screw some rotten wood. The evidence of this witness is somewhat weakened

by the fact that he had been convicted of an infamous crime which, but for our statute, would have rendered him wholly incompetent as a witness. He is corroborated by other witnesses as to his having the iron in his possession about the time mentioned by him, but by none as to the place where it was found. In weighing the testimony of this witness it must also be taken into consideration that there was another railroad bridge crossing this same stream at a distance of not more than eight feet from appellant's bridge, from which the iron in question might have fallen. It was also shown by witnesses for the defense that the screw found in this iron was not such an one as those in use for the same purpose by appellant. This was substantially all of appellee's evidence.

George W. Scales testified on behalf of appellant that he was conductor of the train in question; that at Venice the C. & A. stock car No. 2,615 was taken on destined for Jacksonville; that when the train arrived at Venice the car bound for Edwardsville was next to the engine, and that the stock car was placed in the rear of it; that at Mitchell they took on the flat car and placed it between the Edwardsville car and the stock car. At Edwardsville crossing the Edwardsville car was left and two cars loaded with wood were taken on and placed next to the engine, with the flat car immediately in their rear and the stock car in the rear of that, in which position the cars remained until the train arrived at Alton, where the train immediately upon its arrival was taken in charge by Edward O'Leary, the yard master. At the time of the last trial the said O'Leary was dead, but his testimony on a former trial was detailed by other witnesses, from which it appeared that when the train came to Alton the stock car was next in the rear of the flat car.

William A. Dedman, the engineer, and George McGarraghan, the fireman, both testify to substantially the same state of facts as Scales, and detail minutely the manner in which the switching was done at the several stations and the way the cars came to occupy their relative positions in the train. It also appears from their testimony that the stock car was loaded instead of being an empty one, as testified to by one of appellee's witnesses.

The conductor's report of this train, made in due course of business to his superiors, shows that all the cars in this train when it left East St. Louis were loaded, with one exception, and that one was left at Edwardsville; that a loaded stock car was taken on at Venice, an empty flat car at Mitchell and two loaded box cars at Edwardsville crossing, all of which were taken through to Alton.

From a close examination of all the evidence bearing upon the position of the stock car in the train we are of opinion that it overwhelmingly preponderates in favor of appellant's theory, that it occupied a position next in the rear of the flat car, and consequently was that from which appellee fell.

But if it be said that upon this question there was a conflict of the evidence, and it was for the jury to weigh it and to find where the preponderance lay, it will be in order for us to inquire further whether there is any evidence of negligence on the part of appellant. If appellee did not fall from the stock car then there is no satisfactory evidence as to what car he did fall from. The first car in the train when it left East St. Louis had been left at Edwardsville. The two taken on at Edwardsville were in front of the flat car. The stock car and the flat car were the only others that had been taken on after leaving the place of departure. If by any possibility the evidence can be so interpreted as to place the stock car in front of the flat car or the second in the rear of it, then we are absolutely without evidence as to what car in the train it was that appellee actually fell from, and the only evidence of negligence we have is the fact that the round pulled off, and that when found, some rotten wood was found sticking to the screw that held it.

Now it appears from the evidence that the train was composed of twenty-two cars when it arrived at Alton, only a portion of which belonged to appellant's road. Some foreign cars were in the train and if the round found in the creek below was the one that gave way and caused appellee to fall, it is more than probable it came from one of those foreign cars, for the screw that held it was not such an one as those used upon appellant's cars.

It may be conceded that appellant was bound to exercise a high degree of diligence to ascertain the condition of all cars running upon its track whether belonging to itself or to other roads, yet it is incumbent upon the plaintiff to show not only that the car was defective but also that appellant either knew or by the exercise of a high degree of care could have known that fact. There is no evidence whatever that the defect was a patent one of which the car inspectors of appellant were bound to take notice. In such case knowledge of such defect is not to be presumed. It is a mistaken notion urged by counsel for appellee that the existence of such defect is *prima facie* evidence of negligence. Employers are not insurers of the safety of tools or machinery furnished their employes. They are only liable in case of their own negligence or that of their representatives, and the burden of proving such negligence is upon the person alleging it, and where notice of an existing defect is an essential element of the negligence complained of that, too, must be proved: E. St. L. P. & P. Co. v. Hightower, 92 Ill. 139. The evidence shows that appellant had a car-inspecting station at Venice, where every car in every train that came in was inspected, and if anything was found to be wrong it was repaired before the car was allowed to go out. This train, like all others, was inspected at that station and nothing was found to be wrong. What more could be required of appellant it is difficult to imagine, unless we hold it to be an absolute insurer of the safety of all cars running on its road.

The law of this case was so fully settled by the Supreme Court (C. & A. R. R. Co. v. Platt, 89 Ill. 141), that we deem it unnecessary to discuss the authorities cited by appellee's counsel. It is there said, " It will not be contended that a railroad company would be responsible for a latent defect in the boiler of an engine, or for a flaw in a broken rail, of which it had no knoweldge, everything to the eye appearing right and the usual tests discovering no defect. The car in question was in good condition. The screw holding the round of the ladder may have lost its hold upon the wooden upright at a moment before it was grasped by the brakeman. It would

be a very rigid rule to hold the company liable without any proof they knew, or had reason to know, the fastening was defective."

We are of opinion the evidence wholly fails to charge appellant with notice of the alleged defect, and not only that, but the clear preponderance of the evidence is that appellee fell from the stock car, which the evidence so fully shows to have been in a good condition that counsel for appellee do not attempt to controvert it. For these reasons the judgment will be reversed and the cause remanded.

Reversed and remanded.